PRICE, Judge.
Freddie Hutchinson brought this action as a possessory action against A. L. Bufkin Corporation, alleging he has possessed as owner a certain residence in the City of Shreveport purchased from defendant on March 19, 1951, and that his possession has been disturbed by the filing of a lawsuit by defendant seeking to have him evicted from the subject property.
By the allegations contained in defendant’s answer and reconventional demand, the action was converted into a petitory action.
This litigation arises out of a contract entered into on March 19, 1951, styled a “Contract of Sale”, wherein defendant contracted to sell plaintiff Lots 214 and 215 of *637 the Gold Coin Subdivision of Caddo Parish for the total sum of $7,150, payable $350 cash and the balance at $50 per month, beginning April 1, 1951, to be first applied to interest and then to principal at 6 percent annual interest. The contract contained the following provisions: “Sale to be evidenced by Contract of Sale until the full amount of purchase price is paid.”
In his answer and reconventional demand, defendant contends the contract was only a contract to sell (not translative of title) and that pursuant to the terms thereof, plaintiff having made no payments thereon since July 1, 1969, all previous payments should be considered as rent. Defendant also claims plaintiff should be ordered to pay an additional amount equal to $50 per month for the period from July, 1969, until such time as plaintiff vacates the premises. Alternatively, defendant asks that should it be held the contract was translative of title and therefore a completed sale, that a vendor’s lien and privilege be recognized in its favor against the property and that judgment be rendered for the balance due under the contract of $4,155.-67.
Plaintiff answered defendant’s reconven-tional demand, alleging that should the court find the contract sued on was not translative of title but only a contract to purchase, that the credit amount of $6,800 at 6% per annum would be completely liquidated in 19 years at $50 per month, and, therefore, the contract has been fully paid and plaintiff is entitled to have the property conveyed to him free and clear of encumbrances.
Alternatively, plaintiff alleged the property was mortgaged by defendant without his knowledge to Louisiana Fire Insurance Company, who notified him in July of 1969 to begin making payments directly to them, thus defendant should be held liable for payments made by plaintiff on defendant’s behalf to this mortgagee.
After a trial on the merits the trial judge found the contract to be an agreement to buy and sell property under the provisions of LSA-R.S. 9:2941 et seq. (bond for deed contracts) and not transla-tive of title as claimed by plaintiff. The court further found plaintiff had fulfilled the payment requirements of the contract, had never been in default and was entitled to have title conveyed to him free and clear of encumbrances.
For an understanding of the issues raised on this appeal we quote the reasons given by the trial judge for reaching his conclusions on the performance of plaintiff under the terms of the contract, as follows :
“Under the contract the plaintiff was to pay the defendant $50.00 per month for the purchase of his home. These payments were made from April of 1951 through the trial of this case. A standard amortization table was filed in evidence which indicated that the purchase price of the property would have been paid in 19 years at $50.00 per month at the stated interest rate. This would have meant that the property would have been paid for by March of 1970.
“During this same period of time the plaintiff also paid to the defendant, through its proper agent, an additional $600.00 for the purported securing of a deed to the property and attorney’s fees. No deed was ever delivered to the plaintiff nor was any attorney’s services secured. Therefore, said payments should be applied to the purchase price.
“Plaintiff, with regularity, made all of the payments except during the year 1966 when, due to illness, he missed seven payments. Since he paid the $600.00 in 1959 and 1960 (said $600.00 placing him twelve payments ahead) he was not in arrears when he missed the seven payments. Actually, at the end of 1966, he was still five payments ahead. From June, 1969 until May of 1971, the plaintiff paid directly the sum of $46.56 to Louisiana Fire Insurance Company as the result of their instructions to him to *638 pay directly against a mortgage which the Bufkin Corporation had placed on the property in question. This consisted of twenty-four payments at $46.56. This left him some $72.80 behind on the $50.-00 per month payments due Bufkin Corporation. However, at that time he was still the five payments ahead. Therefore, applying the advance payments against this shortage we see that through the payment of May of 1971 he was still three payments of $50.00 per month and an additional $27.20 ahead on any of his alleged payments.
“The Court fails to find at any stage of the relationship between plaintiff and defendant that the plaintiff was in default on the contractual obligation of the $50.00 payment. Since the amortization schedule shows that $50.00 per month would pay out in nineteen years, the plaintiff has had his property paid for since the March payment of 1970. The contract between the parties did state that the plaintiff, in addition to the $50.-00 per month payment, was to pay the taxes on the property. However, nothing in the contract provided for the withholding of the taxes from the $50.00 payment. It is quite true that if the Bufkin Corporation paid the taxes for the period 1951 through 1970 they should be entitled to reimbursement. It is the Court’s opinion that the plaintiff’s overpayment more than compensates for the taxes which would be subject to reimbursement.
“The only other condition of importance in the contract was the right of the defendant to hold the contract in default if the plaintiff failed to insure the property. Again nothing in the contract authorized the defendant to withhold the insurance premiums from the $50.00 per month payment. In fact, nothing in the contract required the plaintiff to have the property insured. Such failure to insure by the plaintiff only gave the defendant the right to either mature the note in full or order the contract to have been violated and convert the contract to one of rent. Prior to the time that the plaintiff paid the obligation in full, i. e. March of 1970, the defendant failed to avail himself of this right of election. The Court does not feel that the defendant can now go back and attempt a redress under this non-insurance clause. Even if it is presumed that the plaintiff was unjustly enriched by the defendant paying for the insurance premiums, the Court feels that the defendant has been justly compensated by the (overpayment to it as well as the payments to Louisiana Fire Insurance Company.”
Pursuant to this opinion of the court, formal judgment was signed ordering defendant to deliver title to the subject property to plaintiff free and clear of encumbrances and rejecting defendant’s claim for reimbursement of taxes and insurance. Additionally, the judgment awarded plaintiff attorney’s fees in the sum of $500 for a failure of defendant to comply with the provisions of LSA-R.S. 9:2941 et seq.[1]
From this judgment defendant has appealed, complaining the trial court erred in failing to find plaintiff was in default in his payment under the contract which would entitle defendant to exercise its op *639 tion to enforce the remaining payment due under the agreement or to rescind the contract, evict the plaintiff and declare prior payments made as rental payments on the property.
The classification of the trial court of the contract as one to buy and sell rather than an agreement translative of title, has not been made an issue on this appeal.
The real crux of the issue to be resolved in this matter is whether the monthly payments of $50 made by plaintiff beginning in April, 1951, and extending over a period of some 19 years through March of 1970, should be prorated only fo interest earned and reduction of principal, or should an amount equal to 142th of the estimated annual taxes and insurance charges be deducted therefrom prior to computing the principal reduction after payment of each monthly installment. According to the amortization schedule filed in evidence and relied upon by the trial judge in his computations, a payment of $50 monthly, at 6% interest, would liquidate the sum of $6,800 in 19 years. On the other hand, the payment record books posted in connection with the monthly installments made in this transaction reflect that amounts of between $6.34 and $12.50 were credited to a fund held for payment of taxes and insurance, thus resulting in a slower reduction of the principal balance, and in March of 1969, these schedules reflect a balance owing of $4,214.98.
Appellant contends there is an ambiguity in the contract regarding the intent of the parties as to whether taxes and insurance were to be paid by plaintiff over and above the fixed monthly installment, or whether the necessary amount for these purposes should be deducted from the payment and the remainder applied to interest and principal. That because of this ambiguity, it is proper for the court to resolve this question by referring to the payment records which reflect taxes and insurance were deducted from the regular monthly payment. We could agree with this argument if the language of the contract did not plainly provide . . . “the balance payable in monthly installments of $50 to be first applied to interest .... and then to the reduction of principal,
We have been cited the case of Cunningham v. Pleze, 244 So.2d 350 (La.App. 3d Cir. 1971) by counsel for plaintiff, which involved a very analogous situation and the court discussed the similar issue involved as follows:
“Our law is clear, and the jurisprudence well settled, that the terms of a written contract may not be varied by parol. La.C.C. Art. 2276; Snow-White Roofs, Inc. v. Boucher, La.App., 182 So.2d 846; and cases cited therein. Here plaintiff seeks to vary the terms of the note and act of sale, which provide in no uncertain terms that the monthly payments are to be applied first to interest and then to principal, by saying that such payments are also to be applied to taxes, insurance, repairs, etc. This contention flies in the face of the parol evidence rule and we may not allow it. The payments made by the Plezes whatever their amount, should have been applied only to interest and principal.”
We find no error in the trial judge’s rejection of appellant’s argument that taxes and insurance should have been deducted from the monthly installment prior to application to interest and principal.
Nor do we find any error in the conclusion that plaintiff is not obligated to reimburse defendant insurance premiums paid on the property since the inception of the contract. The only reference to insurance in the contract is in the acceleration clause which gave the defendant the right to exercise certain options contained therein should plaintiff . . . “fail to pay taxes or insurance prior to delinquency thereof . . . ” As concluded by the trial judge, the defendant did not see fit to exercise the options extended under the *640 contract because of plaintiff’s failure to insure, and this was the only penalty provided for this omission on plaintiff’s part. Appellant argues reimbursement should at least be afforded under the doctrine of unjust enrichment. This would be true if the property had belonged to plaintiff during the period of contract payments. However, title and ownership remained in defendant, and at any time during the period covered by the agreement had plaintiff defaulted in two consecutive payments, then under the provisions thereof the possession of plaintiff was that of only a lessee.
Apparently if the property was insured, it was because of the requirement of the mortgagee, Louisiana Fire Insurance Company, to protect their interest, and this transaction was solely for the benefit of defendant and without the knowledge or consent of plaintiff.
The obligation of plaintiff to pay taxes over and above the monthly installment is clearly set forth in the agreement. Although the trial judge concluded this obligation had been fulfilled by an overpayment by plaintiff either directly to defendant or to the mortgagee, Louisiana Fire Insurance Company, on defendant’s behalf, we do not find the record contains sufficient evidence to establish the amount of taxes paid or the amount of overpayment made with any degree of certainty so that proper adjustment can be made on this item to do justice between the parties. It will, therefore, be necessary to remand this proceeding for the taking of further evidence on this issue, and for rendition of a judgment balancing the equities between the parties and ordering the execution by defendant to plaintiff of a deed translative of title, free and clear of encumbrances within a prescribed time, or upon failure to do so, the judgment rendered shall be evidence of plaintiff’s title to the property.
The remaining issue complained of by appellant is the awarding of attorney’s fees for the violation of the bond for deed statute. The trial judge erred in his interpretation of the penalty provision of this statute, LSA-R.S. 9:2947, which provides a criminal penalty for the prescribed violation and does not afford any basis for the application of attorney’s fees. In the absence of any statutory authorization, attorney’s fees are not generally allowed as an element of damages in this State. Therefore, we think the award of attorney’s fees was improper.
For the foregoing reasons the judgment appealed from is set aside and this cause is remanded to the First Judicial District Court for further proceedings in accordance with the views expressed herein.
Costs of this appeal are taxed against defendant. The assessment of all other costs shall await final determination of this cause.

. LSA-R.S. 9:2942 provides as follows:
It shall be unlawful to sell by bond for deed contract, any real property which is encumbered by mortgage or privilege without first obtaining a written guarantee from the mortgage and privilege holders to release the property upon payment by the buyer of a stipulated mortgage release price, with which agreement the secured notes shall be identified. The agreement shall be recorded in the mortgage records of the parish where the property is situated before any part of the property is offered for sale under bond for deed contracts. The provisions of this Part likewise shall apply to any property offered for sale by bond for deed contract which may be subsequently mortgaged or encumbered by a privilege.
The evidence reflects no compliance was made with this provision of the bond for deed statute.